All right, may it please the court. My name is Dan Polson. I am the assistant federal defender representing Synda Collins, and this is a sentencing appeal from a sentence imposed for a supervised release violation. The court imposed an above guideline sentence of 18 months, and this is actually the second time that Miss Collins has appealed her sentence in this case. In Miss Collins's previous appeal, this court found that the district court had committed plain error by imposing an above guideline sentence based on impermissible statutory sentencing criteria that do not apply in revocation proceedings. This matter was remanded to the district court, and when it was remanded for resentencing, a couple of things happened. The first is that the judge did not comply with this court's mandate and took issue with this court's holding on appeal. He took issue with it, but he didn't comply with it. He asked the parties to look over the sentencing transcript and identify where he ran afoul of this court's holding. It's not that he was annoyed, but in the end, he didn't comply with it. I think what the law of the mandate holds is that when a district court gets a matter remanded, the district court doesn't have the authority to re-examine the factual findings and legal conclusions. Although the district judge questioned the prior ruling and maybe didn't appreciate it, at least on the issue that was remanded, the judge complied with the ruling. There's now a second issue seemingly wholly unrelated to the first issue involving rehabilitation, so maybe you want to address that. Sure enough, and that's fine. Again, there were a couple of problems at the resentencing. I would stress, though, that as far as the court's ultimate compliance with this court's ruling, I think there is room to conclude that the court had difficulty setting aside previously held opinions about the prior ruling. You're correct that in addition to not complying with the mandate, the district court judge also explicitly stated that he was imposing a term of incarceration in order to achieve rehabilitation. Under TAPIA, as well as federal statutory sentencing criteria, incarceration is never appropriate for rehabilitative purposes. Did anybody bring this to the district court's attention at the time? After the court ruled, the trial attorney inquired whether or not it was realistic that Ms. Collins would in fact receive treatment if she got an additional nine months of incarceration. We'll agree that that wasn't sufficient to raise an objection to the court's ruling, but our position is that even under plain error review, we still are entitled to a reversal of Ms. Collins' sentence. The attorney seemingly agrees that it was error, but I guess I'm wondering, was there any effort to then, once there was apparent agreement on that, was there any effort to go back to the district judge and say, look, we both agree you shouldn't have considered rehabilitation, and can you now address that? I don't think it's incumbent on the parties to keep flagging an issue. I mean, again, under plain error review, regardless of whether or not... I don't think it's flagged at all, I think it's the issue. I mean, there's now apparent agreement that there's an error here, but I'm wondering whether in fairness to the district court, why there wasn't some effort to go back to the district court and raise this issue once it became apparent. Well, let's put things in perspective. This is the second time that we've had to appeal a sentence in this case because this judge committed plain error. And I think the question is, can we say that this... And the government agrees that if this court finds that his decision was plainly erroneous, this matter should be assigned to a different judicial officer in order to maintain the appearance of justice. Well, how would you have gone... After he ruled, how would you go back to re-question it? Anyway, you didn't raise that he ruled. Then you raised the question of whether there was actually any utility in this, which seemed to, in some ways, confirm that it actually made a difference to the judgment, to the sentence, because I gather the district court sort of engaged in that and didn't say, well, it didn't make any difference to my determination. Yeah, his response was, I've made my ruling. And I think that was a pretty clear signal that he wasn't open to reconsideration. And again, we would just say that, you know, regardless of whether or not it was preserved or not, it is plainly erroneous. I mean, the facts that this court is presented with are identical to Tapia. In Tapia, that's where the court, you know, acting apparently with good intention, tried to impose a term of incarceration to make sure that the defendant got access to our debt. And the Supreme Court said, you know, well-intentioned or not, that was erroneous. You can never use incarceration to achieve rehabilitation. Can I ask you about your argument for reassignment? So the district court made an error, and we reversed. And he complied with what we told him to do on remand. He did not consider the seriousness of the conduct in imposing sentence. And he made another error, essentially unrelated to the first, and one to which nobody objected. So why is that a reason to infer that he's not capable of handling this fairly if it were reassigned, if it went back to the same district judge? Right. And again, I think the government has conceded that just to maintain the appearance of justice, it's appropriate to have this assigned to a different judicial officer. Although he eventually did conform to the mandate, the degree of discontent that he demonstrated with it was at least extremely unusual. I mean, he asked the parties to somehow prove up that he was right, that he hadn't done what we said he did. And he kind of harassed the parties about this. Did he not? He was very persistent. He asked the parties to submit supplemental briefing as to where in the record he violated this. Which had nothing to do with anything that was really before him. It didn't make any great mistake. It still didn't make any difference anyway. So why was he doing this? Because he was seemingly annoyed. Yeah, yeah. And again, we're not here to slam the judge. We're not arguing that he is biased against Miss Collins personally. But just the history of this case and the mistakes that have been made in the court's expression of frustration, and I guess discontent is how your honor put it, indicates that the assignment to a different judicial officer is appropriate. And I only have about two minutes left, so I'm going to reserve that remaining time for rebuttal. Thank you. Thank you. Ms. Arce, that's how you say it. Good afternoon, your honor. Ms. Charisse Arce for the government. I'd like to address a couple of points that's briefly noted by the court. We believe that the court did comply with the mandate, although noted by your honors. Although the judge took issue and wanted additional briefing on, there was two main issues that he actually requested supplemental briefing on. One being identifying in the transcript a specific section where he referred to critically important and assigning that to seriousness. But the other aspect of the supplemental briefing was to analyze the case law and to add clarity to the issue with the two cases, excuse me, McBowen and Simtoe. Those were actually totally inappropriate because there was nothing to brief and there was no ruling that he could make about it. If I understand your question correctly, your honor. The request for briefing, if he had just sat there and said, I don't think, you know, I don't think I actually said that and I don't think the case law supports it, that would be one thing. But he asked the parties to brief him. And that order was an inappropriate order, was it not? Your honor, I don't think that was inappropriate for two reasons. In United States v. Kellerton, as cited in the government's response brief, there it's completely appropriate to understand the substantive law that the appellate court comes to. And so in this case, the court was, had clear issues with understanding how, in what context to consider seriousness and to the degree. And so it was complying with the mandate in resentencing this individual, DeNovo. And part of that was to understand the substantive law. So it was in compliance with the mandate. Now, can I ask you, I mean, your friend on the other side suggested a number of times that you have conceded that if we reverse on the Tapia issue, that reassignment would be appropriate. And it wasn't totally clear to me from where you discussed reassignment in your brief that you were conceding that it would be appropriate for a reversal on that issue as opposed to just a reversal on the mandate issue. So what is your view on reassignment if we were to conclude that the Tapia error requires reversal? Judge Miller, the government actually does not concede that point, that reassignment would be appropriate. The government stated in its brief that it would not oppose it. So one point I mentioned in the... Your moment was inappropriate, you'd oppose it. That seems like an awfully perspicacious... We do... Your Honor, I said if the court were to find error and were to order remand, we would not oppose reassignment. However, I think Judge Miller did raise an important distinction is that in this case, it wasn't that upon when the case was remanded and resentencing was done, the judge did not commit the same error. It was a different error. So I think what the records show is that this district court judge took due care over three different hearings to ensure that it was complying with the mandate, it was understanding the applicable case law. Just to be sure I understand your position. If we reverse on the Tapia question, you do not oppose reassignment. Is that right? Yes, Your Honor. Okay. On that question, you conceded, the government conceded that the district court erred on that point. But I take your position to be we could somehow conclude that the sentence would remain the same. I'm not sure how you can say that. So maybe you want to try to make the argument and fill it in. Yes, Your Honor. Regarding the plain error analysis, the government does concede the first two conditions are met if there was plain error. However, in terms of the third and fourth prong, the government doesn't believe that this has been met. And so specifically regarding this, it doesn't affect Mrs. Collins' substantial rights or seriously affect the fairness of the proceedings because the record is quite clear that her sentence would have been the same. And if I may, I can point out a couple areas of the transcripts where this makes clear. Now, in the district court's written order, which is at Excerpt of Record 7, there the court starts out by framing the resentencing that she was originally sentenced on the underlying conviction to 12 months and one day. And that was a sentence that was significantly lower than the range of 18 to 24 months. And I think this is indicative because it sets the stage of the trust that the district court imposed when it imposed a below guideline sentence to this individual. Second part of the record is that the district court, in its written order, also indicates that it was troubled that Mrs. Collins was subject to discipline related to opiates when she was in custody awaiting her original sentencing on her supervised release violations. And there, that's at Excerpt of Record 8. That also has a footnote which cites to an August 1, 2018 transcript, and that's of the original disposition hearing. And that can be found in Excerpts of Record 81 and 82. And there, specifically, former counsel for the government also mentions a few disciplinary incidents in detail. And that being when she was in custody at Highland Mountain, she had the use of opiates, a refusal to provide a urine sample. And then, additionally, she also had another, in January of that year, she also had another violation. And so those comments that the government was making are derived from the violation disposition report, which was submitted under seal in this case. But there, on page two of the disposition report, are two paragraphs which outline three different instances where this defendant had a positive drug test, where she was charged... The District Court did rely, separately, from any additional drug use on a rehabilitation issue. The government agrees with that. And so the question is whether it affected... whether there's some reason to think that his sentence wasn't affected. And what is... and the fact that he could have relied on something else. But what's the relevance of that? Your Honor, I think the relevance of this is that it's showing that the judge considered several other factors. And so not just her... I think her history and characteristics, and so her violations while in custody related to opiates, were something the court highly considered, which is indicative of his written order. Right, but I mean, no one disputes that he considered other things, too. But he said there were three critically important factors. That was his phrase, critically important. And this was one of the three. So how could we say, if this thing was critically important, that if it were taken away, that wouldn't have made any difference to the outcome? Yes, Your Honor. I think what the court can look to regarding that issue is that her sentence was ultimately not lengthened. Because her sentence was actually reduced by six months, from 24 to 18 months. And additionally, I think what is... this case is distinguishable from Tapia, where in that case, the judge explicitly stated, where they were lengthening the sentence to ensure that there was... she was able to qualify and complete RDAP. In this case, we have the judge actually imposing sentence first, and then inquiring whether there was a recommendation to complete RDAP. So I think the timing of the district court's comments, the fact that it knew that it was decreasing the sentence, additionally, the fact that it was not extending the sentence to ensure that she was able to complete RDAP. And I do have a quote specifically to the transcript where you're able to... where the district court is able to actually cite to the fact that they are not... she's not eligible to complete RDAP. Eligible for what, I'm sorry? For RDAP, Your Honor. What's RDAP? That's the... it's basically the drug treatment program that's offered by the Bureau of Prisons, and it's 500 hours to complete. But that was what apparently was asked after he had issued his PM. That was, and I think that is indicative of the fact that, unlike Tapia, where that district court judge pronounced explicitly that it was imperative for that defendant to complete RDAP, and they were lengthening the sentence to ensure that they were eligible. In this case, the judge imposed the sentence first without explicitly saying, it's imperative that you complete RDAP. And the timing is, after the sentence was pronounced, then he inquired whether he would like a recommendation for RDAP. So I see that my time has concluded. We would respectfully ask that you affirm this sentence. Thank you very much. Mr. Paulson? Well, the fact is that the judge stated that the reason he was imposing a term of incarceration was to ensure that Ms. Collins continued to receive substance abuse treatment. And that's in the excerpts of record on 4, I believe. So I don't think there's really any question that the judge, and the thing is, this is an above-guideline sentence. It's twice what the parties were recommending. So I think it is fair to say that the judge weighed incarceration as a means to achieve rehabilitation. I think that's expressly linked in the judge's order. And with respect to, you know, Ms. Collins' history and characteristics, certainly Ms. Collins has struggled with substance abuse. There's no question about that. But to the extent that, you know, if this court reverses and remands, Ms. Collins will have the benefit of being able to argue for a sentence based on her current history and characteristics, not just the fact that she's been drug-free for some time now, but also in the wake of the COVID epidemic. And she does also have some medical issues. So I don't think that this court can say with confidence that if this matter is remanded, that Ms. Collins is going to get stuck with the same sentence. What's left of her term? I'm sorry? What is left of her term? Well, she's on the tail end of her state sentence. I think she'll be remanded into federal custody to serve the rest of her federal sentence, which is nine months, I believe, in February. Okay, thank you very much. The case of the United States v. Collins is submitted.
judges: Berzon, Miller, Bress